## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON B. BOWERS,** | : | |
| **Plaintiff** | : | **No. 1:23-cv-00030** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **JUSTIN LENSBOWER, LPN, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Currently before the Court is Defendants' motion to dismiss pro se Plaintiff's second amended complaint. For the reasons set forth below, the Court will deny the motion to dismiss.

### I.    BACKGROUND

Pro se Plaintiff Brandon B. Bowers ("Bowers"), a convicted and sentenced state prisoner, commenced this action by filing a complaint, an application for leave to proceed in forma pauperis ("IFP Application"), and prisoner trust fund account statement, all of which the Clerk of Court docketed on January 29, 2023. (Doc. Nos. 1–3.) In the complaint, Bowers named as Defendants several employees of the Franklin County Jail ("FCJ"), including: (1) Warden William Benchtold ("Benchtold"); (2) Deputy Warden Michelle Weller ("Weller"); (3) Health Administrator Justin M. Lensbower ("Lensbower"); (4) Correctional Treatment Specialist Jessica Sterner ("Sterner"); and (5) "Unknown Kneal (Dentist)" ("Dr. Kneal"). (Doc. No. 1 at 1–2.) Bowers generally alleged that Defendants failed to provide him with adequate dental care while he was incarcerated as a pretrial detainee at FCJ from February 13, 2020, through the filing of his complaint. (Id. at 2.) He asserted claims for violations of the Pennsylvania Constitution as well as claims under 42 U.S.C. § 1983 for violations of the Eighth Amendment to the United States Constitution. (Id. at 8–10.) For relief, Bowers sought various forms of monetary and injunctive relief. (Id. at 11–13.)

On March 9, 2023, the Court issued an Order which, inter alia, granted the IFP Application and directed the Clerk of Court to send waiver of service forms to Defendants. (Doc. No. 6.)  Defendants waived service (Doc. Nos. 9, 11), and filed separate motions to dismiss the complaint along with supporting briefs in April and May 2023 (Doc. Nos. 13–14, 16–17.)  In response to these motions, Bowers filed an amended complaint on May 25, 2023, in which he dropped Benchtold, Weller, and Sterner as Defendants but kept Lensbower and Dr. Kneal (whom Bowers now identified as "David Kneal, Jr. DMD") as Defendants.  (Doc. No. 18 at 1–2.)  Although he did not list them in the caption of the amended complaint, Bowers also appeared to name as Defendants (1) unidentified individuals "who may be identified in discovery and investigation" as having been "directly responsible for denying [him] constitutionally adequate dental care" and (2) "any corporate entity that is contracted to provide dental care." See (id. at 2).

Regarding his legal claims, Bowers asserted only Section 1983 claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.  (Id. at 4.) Bowers indicated that these claims were against Defendants in their individual and official capacities, and he sought compensatory damages, punitive damages, and a declaratory judgment stating that Defendants violated his constitutional rights.  (Id. at 4–5.)

Dr. Kneal and Lensbower filed a motion to dismiss the complaint and a supporting brief on June 5, 2023.  (Doc. Nos. 19, 20.)  Bowers never filed a response to this motion.  On December 19, 2023, the Court entered a Memorandum and Order resolving the motion to dismiss.  (Doc. Nos. 21, 22.)  In the Memorandum and Order, the Court construed Bowers's Section 1983 deliberate-indifference-to-serious-medical-needs claims against Dr. Kneal and Lensbower as falling under the Fourteenth Amendment rather than the Eighth Amendment

because he was a pretrial detainee when the alleged constitutional violations occurred.  See (Doc. No. 21 at 6 (citing <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 581–82 (3d Cir. 2003))).  Construing Bowers's claims in the amended complaint as such, the Court granted the motion to dismiss and dismissed the amended complaint because (1) Bowers never filed a response to the motion to dismiss and, as such, was deemed not to oppose the motion pursuant to Local Rule 7.6;[1] and (2) the amended complaint did not comply with Federal Rule of Civil Procedure 8(a) insofar as Bowers failed to, <u>inter alia</u>, include any factual allegations about his interactions with Dr. Kneal or Lensbower.  (Doc. Nos. 21 at 8–10; 22 at 1.)  The Court also gave Bowers leave to file a second amended complaint.  (Doc. No. 22 at 1.)

On February 21, 2024, Bowers filed a motion for appointment of counsel and a second amended complaint.  (Doc. Nos. 24, 25.)  Bowers once again names Lensbower and Dr. Kneal as Defendants.[2]  (Doc. No. 25 at 1–3.)

Concerning his allegations, Bowers asserts that starting on February 14, 2020, he was held as a pretrial detainee at FCJ.  (<u>Id.</u> at 4.)  After spending seven (7) months at FCJ, a filling fell out of one of his teeth.  (<u>Id.</u>)  Bowers saw Dr. Kneal about the missing filling, and Dr. Kneal told him that all he was "allowed" to do was extract the tooth.  (<u>Id.</u>)

---

[1]  The Court quoted the Local Rule, which states:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion.  Any party who fails to comply with this rule <u>shall be deemed</u> not to oppose such motion.

<u>See</u> (Doc. No. 21 at 8 (quoting M.D. Pa. L.R. 7.6)).

[2]  On this occasion, Bowers identified Dr. Kneal as "Dr. Neal, David, Jr."  <u>See</u> (Doc. No. 25 at 3).  Nevertheless, for consistency purposes, the Court will continue to refer to this Defendant as "Dr. Kneal."

Bowers avers that he "continuously requested the proper preventive care for his tooth[,] and the medical administration denied [him] the proper professional medical standard which would have saved [his] tooth." See (id.). FCJ did not provide or sell dental floss to the inmates and their toothbrushes are three-and-a-half (3 ½) inches long. (Id.) Bowers "continued requesting the needed care to save his tooth," however, his requests were repeatedly denied. See (id.). Due to these denials, Bowers filed grievances, some of which Lensbower answered by informing Bowers that "Prime Care has given [him] adequate dental care." See (id.).

Bowers had "months of mental and physical discomfort" during which he experienced "sleepless nights" and was unable to "concentrate on his legal issues and hand due to [the] pain." See (id.). Bowers's tooth, after two-and-a-half (2 ½) years, developed an infection which resulted in the removal of the tooth.[3] (Id. at 4–5.) He blames the lost tooth on Defendants' repeated denials "from [sic] getting a refill for his tooth and toothpaste," and he notes that he "had high hopes of saving his 28 tooth [sic]." See (id. at 5).

In addition to the above, Bowers alleges that he requested to have an appointment scheduled with an outside dentist. (Id. at 5.) Lensbower responded that Bowers could have such an appointment, but he would have to "pay for all expenses including the trip there by the guards." See (id.). Bowers responded by stating that he lacked health insurance. (Id.)

Bowers asserts that Defendants "neglect[fully] and willfully fail[ed] to provide the proper professional medical [sic] standard deem[ed] necessary to save [his] tooth." See (id. at 6). Instead, for two-and-a-half (2 ½) years, Defendants caused Bowers "pain, suffering and anguish

---

[3] Bowers alleges that he "requested copies of all his electronic requests and responds [sic] and was denied. [He] can provide minimal documents as proof upon request of discovery. As of [sic] dates or times of these events, [he] is unable to provide [them] without defendants [sic] discoveries [sic]." See (id. at 5).

that could of [sic] been prevented by the proper standard medical care." See (id.). As such, Bowers asserts claims against Defendants under Section 1983 for violations of his Eighth and Fourteenth Amendment rights as well as state-law negligence claims. See (id.). For relief, Bowers seeks compensatory and punitive damages. See (id.).

Dr. Kneal and Lensbower filed a notice of their intent to move for dismissal of Bowers's negligence claim for his failure to file a certificate of merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3, a motion to dismiss Bowers's second amended complaint, a brief in support of the motion to dismiss, and a response to Bowers's motion for appointment of counsel on March 4, 2024. (Doc. Nos. 26–29.) On April 23, 2024, the Court issued an Order denying without prejudice Bowers's motion for appointment of counsel and extending the time for him to file a response to the motion to dismiss for a period of twenty-one (21) days. (Doc. No. 30.) Despite this extension of time, Bowers has not filed a response to the motion to dismiss to date. As such, the motion to dismiss is ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Rule 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the Third Circuit Court of Appeals has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).  When following these steps, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these

documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106). This means the Court must always "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'" See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))). Moreover, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it." See Mala, 704 F.3d at 244. However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

**B.    Section 1983**

Section 1983 is the statutory vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

## III.    DISCUSSION

In their motion to dismiss, Defendants argue that Bowers fails to state plausible claims for deliberate indifference to his serious medical needs for three (3) reasons.  (Doc. No. 28 at 4–10.)  First, they contend that the second amended complaint does not comply with Rule 8 insofar as it lacks sufficient factual allegations.  (Id. at 8.)  Second, they assert that Bowers "clearly received dental treatment which included evaluations, medication, and at least one extraction," and he "simply disagrees with the type of treatment he received."  See (id.).  Third, and finally, they maintain that Bowers fails to sufficiently allege Lensbower's personal involvement insofar as the allegations asserted against him pertain to only Lensbower's responses to Bowers's grievances.  (Id. at 8–10.)

Regarding Bowers's professional negligence claims against Defendants, they point out that Bowers failed to file certificates of merit within sixty (60) days of the filing of the complaint as required by Pennsylvania Rule of Civil Procedure 1042.3.  (Id. at 10.)  Since Bowers did not file certificates of merit, despite Defendants providing him with notice of their intent to seek dismissal of his negligence claims, they argue that the Court should dismiss the negligence claims with prejudice.  (Id. at 11–12.)  Moreover, they contend that the Court should dismiss

Bowers's negligence claims because he fails to allege any "facts to substantiate a claim for medical malpractice." See (id. at 12–13).

The Court will address the plausibility of Bowers's claims in turn.[4]

### A.    Deliberate-Indifference-to-Serious-Medical-Needs Claim Against Dr. Kneal

Bowers's deliberate indifference claim against Dr. Kneal appears to be based solely on Dr. Kneal informing him in September 2020 that he was "only allowed to extract" Bowers's tooth with the missing filling, apparently instead of replacing the filling. See (Doc. No. 25 at 4).[5] The Court finds that Bowers has pleaded a plausible deliberate indifference claim against Dr. Kneal and, as such, will deny Defendants' motion to dismiss this claim.

In the first instance, even though Bowers references both the Eighth and Fourteenth Amendments in his second amended complaint, as the Court explained in the Memorandum addressing Defendants' motion to dismiss the amended complaint, see (Doc. No. 21 at 6–7), the Fourteenth Amendment applies to his deliberate indifference claims because he was a pretrial detainee in the FCJ at the time of the events at issue. See Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (explaining that the Fourteenth Amendment applies to claims by pretrial

---

[4] Although Local Rule 7.6 allows the Court to deem Defendants' motion unopposed, the Third Circuit has cautioned that "District Courts may not grant a Rule 12(b)(6) motion as unopposed and dismiss a complaint 'solely on the basis of [a] local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted, as provided in [Rule] 12(b)(6)." See Wiggins v. MacManiman, 698 F. App'x 42, 43 (3d Cir. 2017) (unpublished) (quoting Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)).  In accordance with the Third Circuit's directive, the Court will analyze Defendants' motion on the merits.

[5] The Court recognizes that Bowers includes other allegations in his second amended complaint about his dental care.  See (id. at 4–5).  Those allegations include, inter alia, (1) the FCJ "did not provide or sell the inmates dental floss and the toothbrush is 3 ½ inches long," (2) Bowers "continu[ally] request[ed] the needed care to save his tooth," and (3) Bowers was repeatedly denied "from getting a refill for his tooth and toothpaste." See (id.).  Bowers does not allege facts connecting either Defendant to these allegations.  As such, the Court has not addressed them in this Memorandum.

detainees, and the Eighth Amendment applies to claims by individuals incarcerated "after sentence and conviction" (quoting Graham v. Connor, 490 U.S. 386, 392 n.6 (1989))). Nevertheless, because "the Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," courts apply the same standard "pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment[] when evaluating whether a claim for inadequate medical care by a [pretrial] detainee is sufficient under the Fourteenth Amendment." See Natale, 318 F.3d at 581 (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) and citing Boring v. Kozakiewicz, 833 F.2d 468, 472 (3d Cir. 1987)).[6]

To state a constitutional claim based on the failure to provide medical treatment, a prisoner-plaintiff must allege facts indicating that prison officials were deliberately indifferent to the prisoner's serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." See id. at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Institutional Inmates

---

[6]  In Natale, the Third Circuit indicated that it was not "decid[ing] whether the Due Process Clause [of the Fourteenth Amendment] provides additional protections to pretrial detainees beyond those provided by the Eighth Amendment to convicted prisoners." 318 F.3d at 581 n.5; see also Moore v. Luffey, 767 F. App'x 335, 340 & n.2 (3d Cir. 2019) (unpublished) (evaluating deliberate-indifference -to-serious-medical-needs claim by pretrial detainee under Eighth Amendment standard; declining to address whether new standard applies to these types of claims by pretrial detainees; and discussing similarity of standards under Eighth and Fourteenth Amendments).

v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted).  A serious

medical need also exists where "failure to treat can be expected to lead to substantial and

unnecessary suffering."  See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

A prisoner-plaintiff properly alleges deliberate indifference "where the prison official (1)

knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2)

delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner

from receiving needed or recommended medical treatment."  See Rouse v. Plantier, 182 F.3d

192, 197 (3d Cir. 1999); see also Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir.

2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official

"intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the

treatment once prescribed" (internal citations and quotation marks omitted)).  Allegations of

medical malpractice and mere disagreement regarding proper medical treatment are insufficient

to establish a constitutional violation.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

Here, Bowers pleads a plausible deliberate-indifference-to-serious-medical-needs claim

against Dr. Kneal.  In the first instance, Bowers's missing filling, which caused him "months of

mental and physical discomfort," see (Doc. No. 25 at 4), constitutes a serious medical need.  See,

e.g., Dean v. Coughlin, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) ("Inmates' . . . dental needs—for

fillings, crowns, and the like—are serious medical needs as the law defines that term."); see also

Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) (concluding that an untreated tooth cavity

can present a serious medical need); Taylor v. County of Chester, No. 23-cv-04031, 2023 WL

7329497, at *6 (E.D. Pa. Nov. 6, 2023) ("Taylor has alleged serious medical needs in the form of

his cavities, which caused him pain and sensitivity, and interfered with his ability to eat and

drink."); Oke v. Biggins, No. 18-cv-00214, 2019 WL 6702142, at *3 (W.D. Pa. Nov. 15, 2019)

("For a period of at least 28 days, Plaintiff's cavity caused him to experience severe pain in his face, jaw, and neck.  His condition interfered with his ability to eat, drink, and sleep.  This constitutes a serious medical need."), report and recommendation adopted, 2019 WL 6701455 (W.D. Pa. Dec. 9, 2019).  As another district court has persuasively explained:

> [T]he medical condition here was not a single cavity. It was a lost filling. Even a layperson can appreciate the dangers inherent in a hole in a tooth, potentially exposing the inside of a tooth to food particles or bacteria:
>
>> If a filling isn't replaced within a few days, it could cause damage to the unprotected tooth.  Bacteria and food particles can stick into the empty space, causing decay.  Also, the missing filling can expose dentin, the second layer of tooth under the hard outer enamel. Dentin is softer than enamel and more susceptible to decay. Exposed dentin can also be very sensitive.  Further decay or damage to the tooth may require more extensive repair work, such as a crown, root canal, or extraction.  That's why the sooner you can get the filling replaced, the better.
>
> Marjorie Hecht, What To Do If Your Filling Falls Out, Healthline (Mar. 26, 2020), https://www.healthline.com/health/what-to-do-if-your-filling-falls-out; cf. Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.").

See Ortiz v. Pearcy, No. 19-cv-00061, 2021 WL 681074, at *2–3 (N.D. Ind. Feb. 22, 2021).

Additionally, while Bowers's actual factual allegations are sparse, he sufficiently alleges Dr. Kneal's deliberate indifference when Bowers indicates that Dr. Kneal told him that he was "only allowed to extract the tooth."  See (Doc. No. 25 at 4).  It can be reasonably inferred from the word "allowed" that there was a non-medical reason why Dr. Kneal could/would not fill Bowers's tooth and told Bowers that he was limited to extracting it.  At this early stage in the case, Bowers has alleged enough to warrant the Court denying Defendants' motion to dismiss his deliberate-indifference-to-serious-medical-needs claim against Dr. Kneal.[7]

---

[7]  In reaching this conclusion, the Court disagrees with Defendants that the second amended complaint does not comply with Rule 8, which requires "only a short and plain statement of the

**B.**       **Deliberate-Indifference-to-Serious-Medical-Needs Claim Against Lensbower**

Bowers's factual allegations against Lensbower appear to solely relate to Lensbower

addressing some of Bowers's grievances relating to the lack of medical care for his tooth with

the missing filling.  See (Doc. No. 25 at 4–5).  Although in most circumstances, a Section 1983

defendant's involvement in the grievance process is insufficient in itself to show that they were

personally involved in any constitutional violation, the Court concludes that Bowers has once

again alleged just enough facts for a plausible deliberate indifference claim against Lensbower.

In general, a plaintiff asserting a Section 1983 claim must allege that each defendant was

personally involved in the act or acts that they claim violated their federally protected rights.  See

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "A plaintiff makes sufficient

allegations of a defendant's personal involvement by describing the defendant's participation in

or actual knowledge of and acquiescence in the wrongful conduct."  Chavarriaga v. N.J. Dep't of

Corr., 806 F.3d 210, 222 (3d Cir. 2015) (citing Rode, 845 F.2d at 1207); Dooley v. Wetzel, 957

F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations

of personal direction or of actual knowledge and acquiescence'" (quoting Rode, 845 F.2d at

1207)).  Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not

rely solely on respondeat superior, see Rode, 845 F2d at 1207 (citation omitted), which is a

---

claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a)(2).  Bowers's
allegation, while "short and plain," sufficiently states his claim against Dr. Kneal.  Moreover,
although Defendants argue that Bowers "clearly received dental treatment which included
evaluations, medication, and at least one extraction," it is not so clear from the Court's
perspective.  At best, the amended complaint describes that Bowers had a single dental
appointment with Dr. Kneal until his tooth was extracted two-and-a-half (2 ½) years later, and
only after an infection developed in the tooth.  Bowers also does not describe having received
any medication.  Even though it is possible that the evidence produced during discovery will
show that Bowers received appropriate dental care, Defendants' overstatement of Bowers's
allegations relating to the dental care he received detracts from their arguments in support of
dismissal.

theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm[,]" see Santiago, 629 F.3d at 128 (quoting Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 692 (1978)). Instead, if a plaintiff seeks to hold a supervisor liable for unconstitutional acts by their subordinates, the plaintiff's allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." See A.M. ex rel. J.M.K. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must "identify the specific supervisory practice or procedure that the supervisor failed to employ." See Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)). The plaintiff must also show that:

> [(1)] the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, [(2)] the supervisor was aware that this unreasonable risk existed, [(3)] the supervisor was indifferent to the risk[,] and [(4)] the underling's violation resulted from the supervisor's

failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See id. (quoting Brown, 269 F.3d at 216). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of [their] employees solely because [they are] a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." See Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

In this case, Bowers does not attempt to hold Lensbower, FCJ's Health Administrator, liable under Section 1983 based on the first theory of supervisory liability, i.e., a policy or practice. Instead, Bowers appears to assert that Lensbower personally violated his Eighth Amendment rights through his responses to Bowers's grievances. As mentioned above, in most instances the mere response to the filing of a grievance is insufficient to impute the actual knowledge and acquiescence necessary to demonstrate a defendant's personal involvement in an

15

asserted constitutional violation.  See Rode, 845 F.2d at 1207–08 (finding that the filing of a

grievance with the Governor-defendant's office was insufficient to demonstrate that the

Governor himself had personal knowledge of the alleged wrongdoing).  Additionally, grievances

that complain of events that have already occurred and that are in the past are insufficient to

show that defendants who respond to such grievances were personally involved in the asserted

constitutional violations.  See, e.g., Robles v. Casey, No. 10-cv-02663, 2011 WL 398203, at *2

(M.D. Pa. Feb. 3, 2011) (concluding that plaintiff had not shown personal involvement where

"plaintiff's grievance only reported violations that had occurred in the past").

        Nonetheless, the Third Circuit has, under certain, limited circumstances, determined that

a supervisory official's response to a grievance may be sufficient to show that official's personal

involvement in the plaintiff's asserted constitutional claims.  See, e.g., Sutton v. Rasheed, 323

F.3d 236, 249–50 (3d Cir. 2003), as amended (May 29, 2003) (finding that prisoner-plaintiffs

had established the personal involvement of a defendant who had played an "active role" in the

continued denial of their access to religious texts and basing this finding, in part, on the fact that

the defendant had issued a written response denying a final-grievance-appeal letter from one of

the plaintiffs, which requested access to such religious texts); Johnson v. Wireman, 809 F. App'x

97, 100 (3d Cir. 2020) (unpublished) (concluding that plaintiff's allegations that state prison

superintendent's and grievance officer's responses to grievances which went beyond merely

denying the grievances to allegedly coerce the plaintiff to change his religious practices showed

sufficient personal involvement); Diaz v. Palakovich, 448 F. App'x 211, 215 (3d Cir. 2011)

(unpublished) (vacating district court's grant of summary judgment where the district court failed

to consider grievances pertaining to a pattern of ongoing wrongful conduct, and explaining that a

reasonable factfinder could find that (a) the defendants had knowledge of such wrongful conduct

16

through the prisoner's grievances and (b) had acquiesced in such conduct by failing to address the ongoing pattern of wrongful conduct).  However, the facts in those cases involved either: (1) the supervisory officials response to the grievances constituting an alleged constitutional violation, such as by encouraging the plaintiff to change their religious practices, see Sutton, 323 F.3d at 249–50 (determining that evidence showing that supervisory official responded to final appeal of grievance in which the plaintiff complained that he was denied religious texts by criticizing those texts, "appear[ed] to have play an active role" in the alleged constitutional violation); Johnson, 809 F. App'x at 100 & n.20 (concluding that district court erred in dismissing the plaintiff's claims for First Amendment violations against grievance officer and prison superintendent because the plaintiff alleged that the grievance officer and superintendent advised the plaintiff to observe the fasting practice of a different religion); or (2) the supervisory officials learned about the alleged constitutional violations through a grievance and acquiesced in the violations by failing to address an ongoing constitutional violation, see Diaz, 448 F. App'x at 215 (concluding that "a reasonable factfinder could find that these [supervisory] defendants had knowledge of the violations through [the plaintiff's] grievances and acquiesced in the violations by failing to address a practice of opening legal mail outside of an inmate's presence"); McCollum v. Pries, No. 22-cv-01710, 2024 WL 1416502, at *7 (M.D. Pa. Apr. 2, 2024) ("[R]esponding to a grievance that complains of events that are ongoing and denying the requested relief may constitute the knowledge and acquiescence that is necessary to show personal involvement in a Section 1983 action."); Roberts v. Luther, No. 21-cv-00958, 2021 WL 5233318, at *5 (M.D. Pa. Nov. 10, 2021) ("Several courts have concluded that a supervisory official may be held liable in connection with a review of grievances alleging an ongoing violation because the official 'is personally involved in that violation because [they are]

17

confronted with a situation [they] can remedy directly.'" (quoting <u>Mayo v. Oppman</u>, No. 17-cv-00311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), <u>report and recommendation adopted</u>, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018))).

Here, Bowers alleges that he continued to request the care needed for his tooth, and when he did not receive any care for it, he filed grievances, some of which Lensbower denied.  (Doc. No. 25 at 4.)  Therefore, Bowers was not merely complaining about a past incident, which would be insufficient to show Lensbower's personal involvement.  <u>See</u> <u>Sims v. Wexford Health Sources</u>, 635 F. App'x 16, 19–20 (3d Cir. 2015) (unpublished) ("If an official's only involvement is the investigation or adjudication of an inmate grievance after the event giving rise to the grievance has happened, that is not considered to be personal involvement." (citing <u>Rode</u>, 845 F.2d at 1208)); <u>see also</u> <u>Mincy v. Chmielsewski</u>, 508 F. App'x 99, 104 (3d Cir. 2013) (unpublished) ("[T]he District Court is correct that an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement.") (citation omitted)).  Instead, at least at this early stage in the case, the Court construes Bowers as repeatedly seeking care for the tooth with the missing filling only to have his requests denied and his grievances denied by Lensbower.  In other words, Bowers was asserting an ongoing medical issue that Lensbower continually declined to address.  Accordingly, the Court concludes that Bowers has sufficiently alleged Lensbower's personal involvement in a possible Eighth Amendment violation, and the Court will deny the part of Defendants' motion to dismiss seeking to dismiss this claim.

### C.    State-Law Professional Negligence Claims

Bowers asserts professional negligence claims against Defendants.  (Doc. No. 25 at 6.)  However, he has failed to file a certificate of merit ("COM") as to each Defendant in accordance

with Pennsylvania Rule of Civil Procedure 1042.3.  Due to this failure, Defendants move for dismissal of Bowers's professional negligence claims.  Even though Bowers's claims would be subject to dismissal, the Court cannot grant this part of Defendants' motion because they have not followed the proper procedure in seeking dismissal of these claims.

Under Rule 1042.3, a plaintiff must file a COM in any case in which they allege that "a licensed professional deviated from an acceptable professional standard" within sixty days after filing the complaint.  See Pa. R. Civ. P. 1042.3(a).  Rule 1042.3 is substantive law that must be applied by this Court when considering a claim of malpractice or professional negligence under Pennsylvania law.  See Liggon-Redding v. Est. of Sugerman, 659 F.3d 258, 264–65 (3d Cir. 2011).  A defendant may not seek dismissal of a professional negligence claim based on the lack of a COM unless they have provided thirty (30) days' notice prior to seeking dismissal.  See Pa. R. Civ. P. 1042.7(a)(4); Schmigel v. Uchal, 800 F.3d 113, 124 (3d Cir. 2015) ("The condition of thirty days' notice prior to seeking dismissal of an action for failure to comply with the COM regime is substantive and must be applied in federal court. Uchal was therefore required to provide Schmigel with notice before he had a right to dismiss this action, and his failure to do so requires reinstatement of this action in the District Court.").

Here, Defendants filed their notice of intent to seek dismissal of Bowers's professional negligence claims on the same day they filed their motion to dismiss.  (Doc. Nos. 26, 27.)  Since Defendants failed to provide the requisite thirty (30) days' notice prior to seeking dismissal of the professional negligence claims, the Court must deny the part of their motion to dismiss these professional negligence claims.[8]  See Johnson v. Rivello, No. 22-cv-01048, 2023 WL 4916396,

---

[8]  Although Defendants acknowledge having filed their motion to dismiss and notice of intent to dismiss on the same day, they "submitted that [Bowers] may file a Certificate of Merit within 30 days" and if he failed to do so, "the negligence claims should be dismissed with prejudice."  See

at *6 (M.D. Pa. Aug. 1, 2023) (denying parts of defendants' motions to dismiss plaintiff's professional negligence claims due to his failure to file COMs because one moving defendant filed a notice of intent to dismiss on same day as their motion to dismiss and the other moving defendant filed a notice of intent to dismiss one day before filing their motion to dismiss); Sutton v. Noel, No. 19-cv-02080, 2021 WL 4860772, at *6 (M.D. Pa. Oct. 19, 2021) ("A defendant seeking to dismiss for want of a certificate must first file written notice of their intent to do so, no sooner than 30 days after the complaint was filed." (citing Pa. R. Civ. P. 1042.6(a), 1042.7)).

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny Defendants' motion to dismiss Bowers's second amended complaint.  An appropriate Order follows.


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

(Doc. No. 28 at 12).  Defendants have not identified any legal authority which allows them to file the notice of intent to dismiss and the motion to dismiss on the same date.  While there is some authority to suggest a finding that that the notice required by Rule 1042.7 may be satisfied by the filing of a motion to dismiss, see Folk v. Bureau of Prisons, No. 21-1543, 2021 WL 3521143, at *2 (3d Cir. Aug. 11, 2021), the Court reads Schmigel to require defendants to provide thirty (30) days' notice to the plaintiff prior to seeking dismissal of the negligence claim for failure to file a certificate of merit.  See Schmigel, 800 F.3d at 124 (noting that defendant must provide thirty days' notice "prior to seeking dismissal").  Hence, the Court follows the controlling precedent of Schmigel and concludes that Defendants needed to provide thirty (30) days' notice prior to seeking dismissal of Bowers's professional negligence claims for his failure to file COMs.